UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Ronald M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-01315-MG-RLY |
| ) | |
| Leland Dudek, Acting Commissioner of Social ) Security,[1] ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING DEFENDANT'S DECISION**

In March 2020, Ronald M. applied for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB"), alleging a disability onset date of March 1, 2017. He previously applied for benefits in March 2017, but did not pursue that claim after it was initially denial on April 5, 2018. [Filing No. 16-3 at 3; Filing No. 16-5 at 3-9.] His second application was denied initially and upon reconsideration. [Filing No. 16-4 at 3-9.] Ronald M. requested review by an Administrative Law Judge ("ALJ"). A hearing took place on December 1, 2021, and the ALJ issued a partially favorable decision on December 21, 2021. [Filing No. 16-3 at 52-73.] The Appeals Council remanded the decision on June 13, 2022. [Filing No. 16-3 at 77.]

A second hearing was held on November 15, 2022, before a different ALJ. [Filing No. 16-2 at 49-70.] The ALJ issued another partially favorable decision on December 12, 2022. [Filing No. 16-2 at 19-49.] The Appeals Council denied review of that decision on May 1, 2023. [Filing

---

[1] Leland C. Dudek became the Acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

No. 18 at 4]. On July 27, 2023, Ronald M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9; Filing No. 10.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying Ronald M. benefits.

## I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ (and the Appeals Council) applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch,*

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to Defendant. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Ronald M. was 43 years old at the time of his alleged onset date, March 1, 2017, at which time he was unhoused and did not have a place of residence. [Filing No. 18 at 4.] Ronald M.'s applications allege an extensive medical history which has been complicated and at times exacerbated by periods of substance abuse and homelessness. [Filing No. 18 at 4.] Specifically, Ronald M.'s applications state he is unable to work due to cirrhosis, asthma, chronic obstructive pulmonary disease (COPD), bipolar disorder, anxiety, and struggles with substance abuse. [Filing No. 18 at 4].

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Ronald M. was not disabled. Specifically, the ALJ found as follows:

- At Step One, the ALJ found that Ronald M. had not engaged in substantial gainful activity since his alleged onset date of March 1, 2017. [Filing No. 18 at 6.]

- At Step Two, the ALJ found Ronald M.'s medically determinable impairments include: COPD, bipolar disorder, anxiety, and history of substance abuse. [Filing No. 18 at 6.]

- At Step Three, the ALJ found Ronald M. did not have an impairment or combination of impairments that met or equaled a Social Security listing prior to October 2, 2020. [Filing No. 18 at 6.] The ALJ also found Ronald M. has a "mild" limitation in understanding, remembering, or applying information, and "moderate" limitations on interacting with others, concentration, persistence and maintaining pace. [Filing No. 18 at 6.]

- After Step Three but before Step Four, the ALJ determined that Ronald M. had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and §416.967(b) except for the following limitations: "only occasional crouching, crawling, kneeling, stooping, and climbing; and no exposure to extremes of cold, heat, and humidity. The claimant has the ability to understand, remember and carry out only simple instructions and tasks. He could have no contact with the public, and only occasional interactions with coworkers and supervisors." [Filing No. 18 at 7.]

- At Step Four, considering Ronald M.'s RFC, the ALJ determined that Ronald M. could not perform any of his past relevant work, but could perform other relevant work prior to his established onset date of October 2, 2020. [Filing No. 18 at 7.]

- At Step Five, relying on the vocational expert's testimony, the ALJ found that considering Ronald M.'s age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that he could perform. [Filing No. 20 at 6.]

## II.
### DISCUSSION

Ronald M. argues that the ALJ failed in the following ways: (1) not building an accurate and logical bridge between the medical evidence regarding the claimant's COPD and back pain, and the ALJ's finding of no disability prior to the October 2, 2020 established onset date; (2) failing to hear vocational testimony during the remand hearing; and (3) not considering the number of jobs available to the claimant in the statutorily required manner.

### A. Testimony from the Vocational Expert

Ronald M. first argues that the ALJ impermissibly relied on VE testimony from the first hearing despite new evidence presented by the medical expert and Ronald M. in the second hearing. He argues that at the second hearing the ALJ failed to allow him to cross examine the VE. [Filing No. 18 at 11.] Ronald M. contends that as the Appeals Council had completely vacated the

5

decision from the first hearing, the ALJ was required per HALLEX § 1-3-7-1, to consult the VE independently and issue a completely new decision from the initial hearing rather than rely on the VE's initial assessment. [Filing No. 18 at 11.] Further Ronald M. holds that any failure to address or object the VE's testimony during the second hearing results from the procedural failure on the part of the ALJ because the VE was not consulted during the second hearing and thus could generate no testimony to rebut. [Filing No. 22 at 3-4.]

      The Commissioner does not address the issue of a procedural error by the ALJ directly in their response, but rather focuses on the nature of questioning that Ronald M. posed to the VE during the initial hearing, contending that he waived their ability to question the findings of the VE by failing to challenge them adequately or in a non-perfunctory manner. [Filing No. 20 at 20-28.]

      The Commissioner's failure to address the procedural issue raised by Ronald M. in both their initial and responsive briefs is telling. While it is certainly discretionary whether or not to utilize the testimony of a VE, 20 CFR § 404.1560(b)(2), the HALLEX manual makes clear in § 1-2-6-74 that if this testimony is being relied upon as part of the determination the ALJ must not only "verify the VE has examined all vocational evidence of record," but also provide the claimant and their representative with the opportunity to "question the VE fully on any pertinent matter." HALLEX § 1-2-6-74(E). Though the ALJ may determine what order and manner a claimant may question the VE, it is a right that cannot be overlooked unless deliberately waived by a plaintiff. Here the record shows that the ALJ did not provide the requisite opportunity for Ronald M. to question or cross-examine the VE during the second hearing, and instead inappropriately relied upon VE testimony from a previous hearing which had since been completely vacated by the Appeals Council. [Filing No. 16-2 at 69.] Further, as additional evidence was presented at the

second hearing, the ALJ's decision to rely upon the VE's testimony from the first hearing was in error. Remand is necessary to allow for a new decision that incorporates new questioning of the VE from the ALJ and Plaintiff's attorney.

### B. Medical Evidence of COPD

Ronald M. then argues that because COPD is a progressive illness which worsens with time, it is "unlikely and nonsensical" that October 2, 2020 is the first day that his lung function met the listing criteria. He argues that date is merely the first day a reliable test was captured. [Filing No. 18 at 7.] Ronald M. says this position is supported by the elements of the longitudinal record pertaining to his pulmonary health analysis and by the 2020 pulmonary function study which led to his § 3.02 listing. [Filing No. 18 at 8.] Ronald M. then argues that the ALJ is impermissibly "playing doctor" by relying on his own interpretation of the medical records in both making the disability determination and creating his residual functional capacity and that he failed by not availing himself of a medical expert's opinion in making his determination. [Filing No. 18 at 8.] Regarding the overall RFC finding, the Commissioner contends that Ronald M. "waived his challenge to the ALJ's work limits related to his lung condition" as his argument was perfunctory and undeveloped and thus must be waived. [Filing No. 20 at 10 (citing *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)).]

A claimant's "residual functional capacity" or "RFC" is the most he can do in a work setting, despite his limitations. 20 C.F.R. § 404.1545(a). When creating an RFC for a claimant, the ALJ is required to examine the evidence presented in a way that provides a "'logical bridge'" between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. Ct. App. 2010). Furthermore, "an ALJ may not ignore evidence that undercuts her conclusion." *Spicher v. Berryhill,* 898 F. 3d 754, *Scrogham v. Colvin*, 765 F.3d 685,

698 (7th Cir. 2014). An ALJ also may not ignore a claimant's limiting qualifications regarding their daily activities. *Jones v. Astrue*, at 1162.

During the period prior to October 2020, the ALJ held that Ronald M. maintained the capacity for "light work" as defined in 20 C.F.R. § 404.1567(b) and §416.967(b). [Filing No. 16-2 at 27.] Part of the disability determination for a claimant to qualify under the listing involves an evaluation of pulmonary test results compared to certain threshold values:

> Pulmonary function tests include spirometry (which measures ventilation of the lungs), DLCO tests (which measure gas diffusion in the lungs), ABG tests (which measure the partial pressure of oxygen, $P_aO_2$, and carbon dioxide, $P_aCO_2$, in the arterial blood), and pulse oximetry (which measures oxygen saturation, $S_pO_2$, of peripheral blood hemoglobin).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Each of these parameters are measured during the pulmonary function test and utilized in combination with other health factors to assess or not assess a disability listing and create the claimant's Residual Functional Capacity. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The record indicates that Ronald M. first established treatment with Dr. Sidle of the Pedigo Clinic in May of 2017. [Filing No. 18 at 4.] This initial exam indicated Ronald M. had a cough, shortness of breath and wheezing with bilaterally coarse breath sounds. [Filing No. 18 at 4 (citing Filing No. 16-7 at 22).] In a consultative exam ordered on March 13, 2018, the examining physician observed "both loud inspiratory and expiratory wheezing, without crackles, rales or rhonchi." [Filing No. 18 at 4 (citing Filing No. 16-7 at 11).] The same day, Ronald M. also reported for the first of four pulmonary function studies conducted in this record, but this study (and the two of the three subsequent studies) contained notes which reported despite Ronald M. understanding instructions and exerting maximum effort, the session quality was poor and mandated "[i]nterpret[ation] with care." [Filing No. 18 at 4 (citing Filing No. 16-7 at 15).] Despite

8

apparent poor session quality, each pulmonary function study demonstrated values that were below or near listing level, and each suggested a lung age of at least 108 years. [Filing No. 16-7 at 15, 19: Filing No. 16-8 at 69, 83.] Ronald M. was also hospitalized twice for COPD related issues prior to October 2020. [Filing No. 18 at 3-4.]

The ALJ held that because the prior pulmonary function studies from 2017, 2018, 2019, and 2020 were listed as "poor session quality, interpret with care," [Filing No. 16-7 at 15, 19: Filing No. 16-8 at 69, 83,] they do not establish a reliable medical record for a listing level respiratory impairment under Listing 3.02 of 20 CFR Part 404, Subpart P, Appendix 1. [Filing No. 16-2 at 26-27.] For a pulmonary examination to be considered valid and included as part of the longitudinal record, the included tests must be administered by a qualified professional, and meet the qualifications laid out in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 Part A. Sec 3.00(4)(E)(2-4). The previous tests met regulatory standards for validity, with exception of being labeled "interpret with care," which is a factor that can determine the validity of test results listed at 20 C.F.R. § Pt. 404, Subpt. P, App. 1 Part A. Sec 3.00(4)(E)(3)(b), but not one that immediately disqualifies their admission to the longitudinal record. The ALJ further held that the symptoms and results prior to October 2, 2020 were exacerbated by the claimant's "homelessness and general lack of treatment." [Filing No. 16-2 at 26.]

Social Security rulings provide that when a claimant has a progressive illness, such as COPD, the onset date may be inferred. Soc. Sec. Rul. 18-1p states that

> At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME [medical expert] by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

9

The undersigned finds there are flaws in the ALJ's conclusions and reasoning regarding Ronald M.'s alleged disability start date due to COPD (March 1, 2017) and the onset date found by the ALJ (October 2, 2020).

While the prior medical tests indicated they were "poor session quality" and directed "interpret with care," thus making them less reliable as reference points for the claimant's health or in formulating an RFC, the findings of the October 2, 2020 test, [Filing No. 16-8 at 1082], indicated a lung age of 109 and listing level impairment in nearly every parameter as noted by the ALJ. [Filing No. 16-3 at 65.] Therefore, despite a lack of reliable data prior to this result, the burden falls on the ALJ to explain the logical bridge between his finding Ronald M. was disabled due to a progressively worsening disease from October 2, 2020 and beyond, but still had the capacity to perform light work prior to the October 2, 2020 examination. *Jones*, 623 F.3d at 1160.

The regulations dictate that the ALJ's most important considerations when examining medical evidence or opinions from the record are "supportability" and "consistency." 20 CFR 404.1520c(b)(2). Supportability in the context of the regulation refers to the relevance of the objective medical evidence presented, and the reliability of supporting explanations presented. 20 CFR 404.1520c(c)(1). Here the prior pulmonary function test results certainly possess a concern about supportability due to their label as "poor session quality." Consistency in the context of the regulation refers to "the more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" weight will be afforded. 20 CFR 404.1520c(c)(2). While the results from the prior pulmonary function studies are directed to be interpreted with care, it can be gleaned without engaging in any medical interpretation that they are relatively consistent with one another numerically. Ronald M. also has an extensive medical record detailing respiratory issues dating to

2017. The ALJ did not create the requisite logical bridge to explain how a progressively worsening and chronic disease coupled with the claimant's other ailments would have no disabling effect at any point prior to the established onset date.

It is also important to note that "while infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding . . . the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. Ct. App 2009) *quoting Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir.2008) (quoting S.S.R. 96–7p). The ALJ specifically notes that it is possible that Ronald M.'s prior poor results were exacerbated by homelessness and a failure to seek treatment. However, the ALJ did not properly analyze these explanations. Therefore, remand is necessary for the ALJ to consider whether the record regarding Ronald M.'s progressive COPD (in connection with periods of homelessness and failure to seek treatment) supports and is consistent with an ability to perform light work prior to the October 2, 2020 examination. The ALJ should consider the use of an expert as to the COPD disability onset date in consideration of Ronald M.'s pulmonary function studies.

### C.  Remaining Issue

In this appeal, Ronald M. also contends that the ALJ did not consider the number of jobs available to him in the statutorily required manner. Because the Court finds that remand is appropriate for the reasons discussed above, the Court need not address this argument.

### IV.
#### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Ronald M. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.  Final judgment will issue by separate entry.

Date: 3/27/2025

*Mario Garcia*
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**